ATTEST:
A TRUE COPY CERTIFIED
Scott L. Poff, Clerk
United States District Court

*By crobinson at 9:00 am, Mar 05, 2020*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

| | |
|---|---|
| HARLEM MARTINEZ, | |
| Plaintiff, | CIVIL ACTION NO.: 5:17-cv-119 |
| v. | |
| WARDEN HILTON HALL; GREG DOZIER; ASST. WARDEN RICK STONE; LINDA WALKER; and TIMOTHY WARD, | |
| Defendants. | |

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff's asserts a claim in this action under 42 U.S.C. § 1983, alleging Defendants violated his equal protection rights under the Fourteenth Amendment. Doc. 32 at 1. Plaintiff, who only speaks and reads Spanish, alleges a discriminatory prison policy has denied him access to Spanish-language legal materials. Id. The parties completed discovery in this case, and Defendants have now filed Motions for Summary Judgment. Docs. 87, 90. Plaintiff filed a Response to these Motions, doc. 96, Defendants filed Replies, docs. 100, 101, and Plaintiff filed a Surreply in objection to certain documents Defendants attached to their Replies, doc. 102. Additionally, Plaintiff has filed two Motions to Compel Discovery. Docs. 85, 86. Because Plaintiff has not presented a genuine issue of material fact, I **RECOMMEND** the Court **GRANT** Defendants' Motions for Summary Judgment and **DISMISS** Plaintiff's Complaint. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case and **DENY** Plaintiff *in forma pauperis* status on appeal. Finally, I **DENY** Plaintiff's Motions to Compel.

**BACKGROUND**

I.  **Procedural History**

In his Amended Complaint, Plaintiff asserted claims for violations of his rights to equal protection and access to the courts and for conspiracy. Doc. 32. Plaintiff also sought to bring the claims on behalf of a class of similarly situated individuals. Id. Plaintiff's claims all arose from a policy at the facility where Plaintiff is incarcerated, Coffee Correctional Facility ("CCF"). The prison library at CCF contains only English-language materials, apart from one bilingual book. Id. Based on the lack of other Spanish-language legal materials, Plaintiff asserted the prison has implemented a discriminatory policy against Spanish-speaking Hispanic inmates. Id. As relief, Plaintiff requested a preliminary injunction barring Defendants from discriminating or retaliating against him, $5,000 in compensatory damages from each Defendant, jointly and severally, $15,000 in punitive damages from each Defendant, jointly and severally, a jury trial, court costs, appointment of counsel, and all other relief the Court deems just, proper, and equitable. Id. at 10.

The Magistrate Judge conducted a frivolity review of Plaintiff's Complaint and found Plaintiff arguably stated a colorable equal protection claim but recommended dismissal of Plaintiff's access to courts, conspiracy, class action, and preliminary injunctive relief claims. Doc. 13 at 11–12. The Court adopted the Magistrate Judge's recommendation over Plaintiff's objections. Doc. 51. Therefore, the only claim remaining is Plaintiff's Fourteenth Amendment equal protection claim against Defendants for damages and injunctive relief. The parties have now completed discovery, and Defendants have moved for summary judgment. Docs. 87, 90.

## II.     Undisputed Facts[1]

Plaintiff has been a state prisoner at CCF since March 2015.  Doc. 90-4 at 2.  Plaintiff, who is originally from El Salvador, speaks little English and cannot read or write in English. Doc. 90-3 at 9–10.  Rather, Plaintiff fluently speaks, reads, and writes in Spanish.  Id. at 10. The CCF law library contains only one bilingual law book: West's Spanish to English Law Dictionary.  Id. at 13.  There is no indication in the record that CCF provides legal materials in any language other than English, with the exception of the one bilingual legal dictionary. Plaintiff has had to receive help from other inmates who have assisted him in translating his legal research and materials.  Id. at 12–13.

CCF is operated by CoreCivic, Inc., a private prison facility.  Doc. 87-1 at 4, 6. Regarding the prison library, CoreCivic prisons in Georgia follow CoreCivic policies rather than Georgia Department of Corrections' policies.  Id. at 8.  The legal materials placed in CoreCivic libraries are not determined by wardens or local prison staff but by the legal department at CoreCivic headquarters.  Id.  CoreCivic uses a Lexis/Nexis subscription at its Georgia facilities "specifically curated for incarcerated populations in each U.S. jurisdiction."  Id.  However, the service is only available in English.  Id. at 9.  Lexis/Nexis does not offer a Spanish language version of the subscription service, nor does it offer a translation service for provided English materials.  Id.  Nor do Lexis/Nexis competitors, such as Westlaw, offer similar legal materials in Spanish.  Id.  The Jailhouse Lawyer's Handbook, which is provided in CoreCivic prisons across the country, is also not presently available for purchase in Spanish.  Id.

---

[1] The Court recognizes there are many disputed facts in this case, e.g., whether the Georgia Department of Corrections and its employees have control over the contents of the CCF law library. Doc. 87-1 at 9; Doc. 96-1 at 3–4.  However, the Court can resolve Defendants' Motions for Summary Judgment based on the undisputed facts set forth in this section.

3

**LEGAL STANDARD**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)). "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most

favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION

Defendants collectively raise seven arguments in favor of summary judgment: (1) Plaintiff's alleged discrimination was not on account of his membership in a suspect class; thus, CCF's policy merits only rational basis review, and under such standard, Plaintiff's claim fails; (2) Plaintiff cannot prove Defendants intentionally discriminated against him; (3) Plaintiff, as a non-English speaker, cannot prove he has been treated differently than similarly situated inmates; (4) Plaintiff fails to assert a causal relationship between Defendants' actions and any violation of Plaintiff's equal protection rights; (5) Plaintiff cannot demonstrate any injury due to the absence of Spanish-language materials; (6) Plaintiff is precluded from monetary relief under the Prison Litigation Reform Act ("PLRA"); and (7) Defendant Dozier is entitled to qualified immunity. Docs. 87, 90.

Plaintiff asserts in his Response that the prison's policy is explicitly race-based in its effect and treats "Plaintiff, a 'Hispanic' prisoner, and all other 'Hispanic' prisoners at CCF, who can't read or write the English language differently because of their race." Doc. 96-2 at 4 (emphasis omitted). Therefore, argues Plaintiff, the Court should apply strict scrutiny to the prison policy, and the prison has no compelling interest for failing to provide more than one bilingual legal book in the CCF law library. Id. Plaintiff also argues the Court should treat all inmates, "regardless of race or language barrier," as similarly situated because of "basic commonalities," such as their custody by the State, subjection to the same general policies, and common goal of their incarceration, i.e., reform and rehabilitation. Id. at 5. Finally, Plaintiff argues qualified immunity should not apply. Id. at 6.

5

The Court concludes Defendants are entitled to summary judgment because Plaintiff does not establish the alleged discrimination was based on his membership in a suspect class, cannot establish intentional discrimination, and cannot prove he has been treated differently than similarly situated inmates, and because Defendants can articulate a rational basis for the prison law library's lack of more than one Spanish-language law book. These conclusions warrant summary judgment in Defendants' favor on Plaintiff's only remaining claim in this action, and, therefore, the Court need not address Defendants' other arguments.

## I. Equal Protection

Plaintiff's sole cause of action is for an alleged violation of his equal protection rights under the Fourteenth Amendment. Doc. 51. The Equal Protection Clause requires the Government to treat similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985), *superseded by statute on other grounds*. To establish such a claim, a prisoner must show: "(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest, such as race." Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001). The plaintiff must also prove that the defendant "acted with discriminatory purpose." See McClesky v. Kemp, 481 U.S. 279, 292 (1987); see also E & T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987) ("The unlawful administration by state officers of a state statute fair on its face, resulting in unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.") (citing to Snowden v. Hughes, 321 U.S. 1, 8 (1944)).

If a suspect classification is implicated, a court must apply strict scrutiny review. Johnson v. California, 543 U.S. 499, 506–07 (2005). If the allegations do not implicate a

suspect class, a court will evaluate only whether there was a rational basis for the treatment. Cook v. Wiley, 208 F.3d 1314, 1323 (11th Cir. 2000). Under rational basis review, the first step is identifying a legitimate government purpose. Joel v. City of Orlando, 232 F.3d 1353, 1358 (11th Cir. 2000); Nyberg v. Crawford, 290 F. App'x 209, 211 (11th Cir. 2008). The actual motivations of the enacting governmental body are entirely irrelevant. Joel, 232 F.3d at 1358. The second step is whether a rational basis exists to believe the challenged action would further the hypothesized purpose. Id. The proper inquiry is concerned with the existence of a conceivably rational basis, not whether that basis was actually considered by the governmental body. As long as reasons for the classification may have been considered to be true and the relationship between the classification and the goal is not so attenuated as to render the distinction arbitrary or irrational, the legislation or policy survives rational-basis scrutiny. Id.

Immutable characteristics determined solely by the accident of birth such as race and national origin are typically the basis for finding a suspect class. Frontiero v. Richardson, 411 U.S. 677, 686 (1973); Williams v. Pryor, 240 F.3d 944, 947 (11th Cir. 2001); Miccosukee Tribe of Indians of Fla. v. United States, 722 F. Supp. 2d 1293 (S.D. Fla. 2010). However—and critical to this case—language proficiency is not interchangeable with national origin or race. Franklin v. District of Columbia, 960 F. Supp. 394, 432 (D.D.C. 1997), *rev'd in part and vacated in part on other grounds*, 163 F.3d 625 (D.C. Cir. 1998). Indeed, many courts have found that language is not an immutable characteristic and, thus, does not identify members of a suspect class. See Soberal-Perez v. Heckler, 717 F.2d 36, 41 (2d Cir. 1983); Aponte-Pinto v. Woods, No. 3:18CV443, 2018 WL 6611484, at *5 (N.D. Fla. Nov. 19, 2018) (finding inmate who spoke only Spanish and was expelled from substance abuse program did not merit strict scrutiny standard of review because "[l]anguage and national origin are not interchangeable," and

7

"[l]anguage . . . by itself, does not identify members of a suspect class"), *report and recommendation adopted*, 2018 WL 6604338 (N.D. Fla. Dec. 17, 2018); Santiago-Lebron v. Fla. Parole Comm'n, 767 F. Supp. 2d 1340, 1350 (S.D. Fla. 2011) (finding inmate excluded from English-only rehabilitation program could not state equal protection claim because "neither his status as a prisoner nor his lack of English proficiency is a protected class"); Velazquez v. Weinman, No. 10-20046, 2010 WL 7430160, at *2 (S.D. Fla. Jan. 28, 2010), *report and recommendation adopted*, 2011 WL 4102348 (S.D. Fla. Sept. 15, 2011), *aff'd*, 466 F. App'x 806 (11th Cir. 2012); Pabon v. McIntosh, 546 F. Supp. 1328, 1340 (E.D. Pa. 1982). Moreover, prisoners are not a suspect class. See Nyberg v. Crawford, 290 F. App'x 209, 211 (11th Cir. 2008); Jackson v. State Bd. of Pardons, 331 F.3d 790, 797 (11th Cir. 2003); Cook v. Wiley, 208 F.3d 1314, 1322–23 (11th Cir. 2000).

Plaintiff claims the CCF law library policy that the library contain exclusively English-language materials, save one Spanish-language legal book, constitutes discrimination on the basis of his race. However, even viewing the facts of the case in the light most favorable to Plaintiff, Plaintiff cannot show that Defendants have violated the Equal Protection Clause of the Fourteenth Amendment.

First, Plaintiff's allegation that Defendants are discriminating against him based on "his race and nationality, as a ("Hispanic") American, from El Salvador," is not supported by the record. To be clear, "Hispanics as an ethnic group do constitute a suspect class for the purpose of equal protection analysis." Soberal-Perez, 717 F.2d at 41. However, the policy Plaintiff challenges concerns only the language of the materials maintained in the CCF library; it does not make any distinction based on race or national origin. Doc. 96-1 at 8. In an effort to portray the library policy as discriminatory based on race, Plaintiff incorrectly equates two distinct

groups: Hispanic inmates and inmates who do not speak English. For example, Plaintiff states "defendants have provided an adequate, effective, and meaningful law library to both 'White' and 'Black' male prisoner's with English materials . . . [but] ('Hispanic') Spanish reading, writing, and speaking inmates, like the Plaintiff, would not have access to a law library with legal materials written in Spanish."[2]  Doc. 96-2 at 4.  Plaintiff concludes "[t]his policy, written or unwritten, is treating the Plaintiff, a 'Hispanic' prisoner, and all other prisoner's at CCF who can't read or write the English language differently BECAUSE of their rase."  Id.  However, being Hispanic and having an inability to speak English are not analogous.

      The library policy at issue in this case—which is tied to language and not race or national origin—highlights the distinction.  Hispanic inmates who speak English are not negatively impacted by the library policy.  Conversely, all inmates who do not speak English are impacted equally by the policy, regardless of their race or national origin.  Plaintiff acknowledges the policy at issue is purely language-based in his "Conclusions of Law to be Drawn from the Material Facts," where he states, "Plaintiff, was and still is being, intentionally discriminated against by these Defendants' policy, that Spanish-speaking inmates would not have access to legal materials written in Spanish, whereas English-speaking inmates have access to legal materials written in English."  Id.  The fact that CCF's Lexis/Nexis subscription and other similar legal resources are only offered in English further demonstrates this point, as those services do not and cannot distinguish between the race or national origin of the inmate user. Doc. 87-1 at 9.  Thus, any non-English speaking prisoner is equally affected by the prison library's lack of non-English legal materials, whatever his race or national origin.

---

[2] Quoted language from Plaintiff's filings is reproduced here without modification or correction for typographical, grammar, or spelling errors.

As explained above, language is not an immutable characteristic and, thus, does not identify members of a suspect class. See, e.g., Soberal-Perez, 717 F.2d at 41 ("Language, by itself, does not identify members of a suspect class."). Therefore, Plaintiff, for purposes of his equal protection claim, is not a member of a suspect class, and, as a result, CCF's alleged library policy requires only rational basis review.

Plaintiff does not dispute there is a rational basis for CCF's policy; he argues only that strict scrutiny applies. Doc. 96-2 at 3–4. That may be because Defendants can easily demonstrate a rational basis for CCF's library policy. As Defendants assert in a sworn affidavit, Lexis/Nexis, Westlaw, and the Jailhouse Lawyer's Handbook are only available in English, not Spanish. Doc. 87-1 at 8–9. Because no comparable, bilingual legal research alternatives exist, Defendants articulate a rational basis to believe CCF's alleged library policy exists to serve the most prisoners within the reality of a limited library budget. See Santiago-Lebron, 767 F. Supp. 2d at 1350; Pabon, 546 F. Supp. 1341. Thus, CCF's policy survives rational basis review, and Plaintiff's equal protection claim fails.

Additionally, to state an equal protection claim, Plaintiff must show he has been treated differently than other similarly situated inmates. As comparators, Plaintiff points to "the Caucasian and African-American prisoners who can read and write in English at CCF." Doc. 6-1 at 8. However, comparators must be "similarly situated in all material respects." Lewis v. City of Union City, 918 F.3d 1213, 1226 (11th Cir. 2019). Inmates who speak limited or no English "are differently situated than inmates who are fluent in English." Franklin, 960 F. Supp. at 432. The CCF law library is available to English and non-English speaking inmates, including those who have helped Plaintiff translate his legal research and filings. Doc. 87-1 at 3; Doc. 90-3 at 12. To the extent Spanish-speaking inmates are unable to meaningfully use the

CCF law library, those Spanish-speaking inmates are differently situated for equal protection purposes due to their limited English fluency. Franklin, 960 F. Supp. at 432; Santiago-Lebron, 767 F. Supp. 2d at 1350 (finding Spanish-speaking inmate excluded from drug abuse program differently situated from English-speaking inmates included in same program). Therefore, Plaintiff cannot show he has been treated differently than similarly situated inmates on account of the alleged policy. Plaintiff's equal protection claim fails for this additional reason.

Finally, Plaintiff's equal protection fails because he has not established that he was treated differently from similarly situated prisoners on account of some form of *invidious* discrimination tied to a constitutionally protected interest. See Schwarz v. City of Treasure Island, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008) (noting that "the equal protection clause prohibits only intentional discrimination"). First, the Lexis/Nexis legal research program offered at CCF, and many other prisons, is unavailable in Spanish, as is a translation application for existing English materials. Doc. 87-1 at 9. Second, popular legal research alternatives are similarly unavailable in Spanish, including Westlaw and the Jailhouse Lawyer's Handbook. Id. Third, Plaintiff admits he has been permitted to work on his case with other inmates, who have translated legal materials for him. Doc. 90-3 at 12. Finally, Plaintiff admits CoreCivic made translation services available to him by introducing into evidence a memorandum from the Warden announcing: "English to Spanish translation assistance is now available for the Law Library." Doc. 96-3 at 173. The facts show the lack of Spanish-language legal materials at CCF is a result of circumstances largely beyond Defendants' control and that Plaintiff has been provided opportunities to address the lack of such materials. For all these reasons, Plaintiff fails to establish Defendants intended to discriminate against him.

Based on the undisputed facts before the Court, Plaintiff cannot, as a matter of law, assert a Fourteenth Amendment equal protection claim. There is no issue left for a finder of fact to consider in this case and, accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motions for Summary Judgment, doc. 87, 90, and **DISMISS** Plaintiff's Complaint.

**II.     Plaintiff's Motions to Compel**

Pending before the Court are Plaintiff's two Motions to Compel Discovery of Defendants Dozier, Hall, Stone, and Walker.[3] Docs. 85, 86. In the first Motion, Plaintiff argues Defendant Dozier's answers to several interrogatories were untimely, incomplete, or evasive. Doc. 85-1 at 3. Defendant Dozier filed a response in which he demonstrated that any delay in his responses was due to Plaintiff's improper service of the interrogatories, argued that Plaintiff's Motion was untimely (because it was filed after the close of discovery), and, in any case, that Defendant Dozier's responses to the interrogatories were proper. Doc. 93. Defendant Dozier provided detailed explanations for each of the disputed interrogatory responses, demonstrating that each response was proper and complete. Id. at 6–12.

In his second Motion, Plaintiff argues Defendants Hall, Stone, and Walker failed to timely respond to Plaintiff's requests for documents and interrogatories and failed to provide requested documents. Doc. 86-1 at 45. Plaintiff also argues Defendant Stone failed to respond at all to Plaintiff's "Second Request for Interrogatories." Id. at 5. Defendants Hall, Stone, and Walker responded to Plaintiff's Motion, providing a detailed rebuttal to each of Plaintiff's contentions, demonstrating that these Defendants timely and fully responded to all of Plaintiff's discovery requests (including Plaintiff's "Second Request for Interrogatories"), and that

---

[3]     Plaintiff filed two other motions to compel earlier in this case. Docs. 45, 46. The Court denied those motions as moot, given that it appeared the parties had resolved any discovery disputes. Doc. 73 at 3.

Plaintiff's representations regarding the purported discovery disputes are factually inaccurate. Doc. 88. Defendants Hall, Stone, and Walker provide a declaration from their counsel's paralegal which chronicles the history of relevant discovery requests and responses and describes the Defendants' efforts to make all responsive documents available to Plaintiff, as well as a declaration from an administrative supervisor at CCF describing Plaintiff's access to produced documents. Doc. 88-1 at 1, 5–6.

The Court has reviewed Plaintiff's Motions and Defendants' Responses, as well as all attached materials, and concludes Plaintiff has not timely identified any deficiency in any of Defendants' various discovery responses. Additionally, nothing in Plaintiff's discovery requests or Defendants' disputed responses to those requests—even if resolved in Plaintiff's favor— would create a genuine dispute of material fact precluding summary judgment for Defendants.[4] Indeed, the discovery requests focus on the respective roles and duties of the various Defendants, the employees under the various Defendants' supervision, information about Georgia Department of Corrections facilities other than CCF, and historic demographic information about the CCF. None of these areas of inquiry would have any bearing on the analysis set forth above. Therefore, the Court **DENIES** Plaintiff's Motions to Compel.

## III. Leave to Appeal *in Forma Pauperis*

Should the Court adopt my recommendation and grant Defendants' Motions for Summary Judgment, the Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address these

---

[4] The Court notes Plaintiff has not shown, or even attempted to show, by affidavit or declaration that he cannot present facts essential to justify opposition to Defendants' Motions for Summary Judgment under Federal Rule of Civil Procedure 56(d).

13

issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier, 314 F.3d at 531; see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009). Based on the above analysis of Plaintiff's action and Defendants' Motions for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal as to any dismissed claims.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motions for Summary Judgment and **DISMISS** Plaintiff's Complaint. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case and **DENY** Plaintiff *in forma pauperis* status on appeal. I **DENY** Plaintiff's Motions to Compel.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 5th day of March, 2020.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA